1935-91 Eastern Arkansas, Tim Axelson v. Randall Watson, et al. Mr. Nguyen. Good afternoon, Your Honors. May it please the Court. Appellant Tim Axelson respectfully requests that the Court reverse the trial court's grant of the directed verdict and remand this case for three independently sufficient reasons. Now, this case at bottom is about systemic failures of safeguards. What is undisputed about this case is that Appellant Tim Axelson, as a prisoner at the Varner Institute at the Department of Correction in Arkansas, had been a model prisoner up until the time that he was attacked. In fact, he was such a model prisoner that he essentially had gained all of the privileges that the Varner unit could give him. And then what was undisputed was that one day as Mr. Axelson was walking through a tunnel, he was attacked by an inmate for unknown reasons. But then he was placed in administrative segregation as per the ADC protocol. And then two weeks later, he was released back into the general population. Three days after he was released, he was attacked by a different inmate. And again, he was placed into administrative segregation. And the undisputed record is that Lieutenant Conner performed an investigation where he heard and understood from at least one source that Mr. Axelson was believed to be a snitch in the prison. Mr. Nguyen, I do have a question about the record on this. As I understand it, and help me make sure that I understand the five folks that you're appealing their dismissal. My first question is, none of those were on the classification committee. Is that correct? None of them are on the classification committee. That's right. So then my follow up question on Watson, who I believe was the warden at the time, is that correct? What evidence is there in the record that he had access to or read the report that you're referring to? I'll call it the Conner investigative report. What is in the record that shows his knowledge of this substantial risk? So in the record, what is very, very clear is that the officer Conner had actual knowledge that Mr. Axelson was a snitch or was designated a snitch by his fellow prison inmates. And as such, I believe that the prison policy and as the security chief Bolden testified, the prison takes an allegation of snitch very seriously because it could have fatal consequences. And so these things should have gone through the official channels, ultimately ending up with the warden. And essentially, the state is making this argument that the report was only made for the classification committee. It shouldn't have gone to anybody else. But I think that that argument is essentially untenable because it's saying the left hand doesn't know what the right I am a snitch by his fellow prison inmates. And he just what about what about Watson? What about Watson does is where in the record is that that he knew the information that was in in the Connor report or independently knew that Mr. Axelson was labeled a snitch by fellow inmates? I will acknowledge your honor that the record is a little bit muddy on that. And it's not clear. Thank you, counsel. I was wondering if you could turn to the denial of the motion for continuance. And I'm I'm somewhat troubled by the fact that the trial court seemed to treat Mr. Brown as a shepherd for the trial. And I'm wondering how did that affect the discovery and his preparation for the trial? Your honor, you hit exactly on that point. And that is that I too, and I've had to is very troubled by that because the court went on record and said, you know, you have a very limited role here that despite after five years of Mr. Axelson working pro se to advance his case, including surviving an interlocutory appeal before this very court. The court then hamstrung Mr. his appointed counsel and said, well, you can't you're really just here to help with the objections and things like that and really minimize his counsel's role. And therefore, counsel actually had asked for discovery to be reopened because the record is very clear that Mr. Axelson faced a huge number of obstacles. What authority did the court have to limit his counsel's rule, number one? And number two, was Mr. Axelson informed of this limited role so that he could make independent discovery decisions? Mr. Axelson was not allowed to. This is a catch 22, Judge Goss. At the following the appointment of counsel, Mr. Axelson was no longer permitted to discuss anything with the court. And so everything had to go through counsel and as counsel made clear in his motions for his personal and family issues, he had very limited time to be able to visit Mr. Axelson and to discuss these issues. I believe they were able to meet only twice at the very most. And that's the other reason why he asked for the continuance. Now, does the record reflect if there were limits placed on trial counsel at the trial? I don't recall that. So I do recall the comment that Judge Goss referenced just a minute ago. I don't recall, were there any limits on what counsel could do in his representation role? The court did not say so much as like, you know, but before trial, at the trial, the court said, well, you know, your role is such and such and so effectively, I would argue, I would submit that there is a, the court did place a limit on what appointed counsel could and could not do. And that's just, Judge Goss, I want to go back to your point is that, you know, what's troubling is not only that this decision, but the decision to sue or respond to grant the directive verdict. Now, I know that the question before this panel formally is an issue of first impression, but functionally, I don't believe so. Because that, you know, since 1985, in the Cheney versus Smith-Klein-Beckham, a panel of this court, and this court has said, you know, we treat summary judgment as equivalent to directive verdict. I don't think that that's a controversial notion. And then in William versus St. Louis, this court says that, you know, yes, the court can note its intent to grant summary judgment, or in this case, directive verdict. But what's really important is that due process requires notice and opportunity to respond. And that's what, and the court, the trial court in this case, acknowledged that he deviated from what he normally does. I quote the court, normally what I do is I let the parties make the argument before I make the ruling. But what I'm going to do today is I'm going to rule, and then I'm going to let the lawyers argue. Counsel, did trial counsel object to that procedure? Trial did not object to that procedure. So why isn't this issue waived? So this issue is not waived for several reasons. Because first, I submit that, you know, when the trial court says, I'm going to rule, and then I'm going to let the lawyers argue, make a record of what they disagree with, I think that the court has already acknowledged that this is going to be an issue that is preserved. But even if the issue is not preserved, in the reply brief, appellant cited to a number of cases where the court, even when an issue is not preserved, can still take up this issue. And in this case, the court, the case law very strongly supports taking up and addressing this issue. The first is Warren versus Lincoln, and that's in 1989, the court sitting on bunk, said, you know, when the question is a question of law, and this is very much a question of constitutional law, the rule favors taking the case. Or actually, the opposite is actually true, is that, you know, the rule against not taking cases that are not preserved does not have much appeal. In Ryder versus Morris in 1985, a panel of this court says that, you know, even when the case is not preserved to prevent injustice, the panel has discretion to take up this case. And then finally, in Roscoff versus Cooley in 2006, this panel actually articulated that the plain error rule also can apply to civil cases. And so for, you know, anyone, three of those reasons, even if this case was not preserved, and we submit that it is, was, this issue is ripe for appeal, and it should be appealed because it is an issue of great constitutional import. I see that I've run into my, over my time, I'm going to reserve the rest for rebuttal. Thank you. Ms. Guest, we're ready to hear from you. Thank you, Your Honors. Good afternoon, and may it please the court. I'm Kat Guest, Senior Assistant Attorney General, and I represent the Appellees who are five employees of the Arkansas Division of Correction. Your Honors, after being given a meaningful opportunity to be heard by presenting his entire case in chief to a jury, Mr. Axelson raises for the very first time on appeal, a challenge to the manner in which the district court handled the directive verdict motions. Adhering to this court's longstanding precedent, this issue is waived and therefore should not be considered by this court. But even if this court were to consider the issue, both federal rule of civil procedure 50, this court's decision in Peterson v. Peterson and in Barclay v. Gabrielle Brothers firmly established that trial courts can consider sua sponte both motions for directive verdict and motions for summary judgment. The court's decision to grant the directive verdict was proper because Mr. Axelson simply failed to establish that any of these five appellees had subjective knowledge that he faced a substantial risk of harm and did nothing about it. And finally, this court should affirm the district court's denial of Mr. Axelson's 11th hour motion for continuance because that decision was not an abuse of discretion. Turning first to the issue of waiver, it's well settled that this court doesn't consider arguments raised for the first time on appeal, and the appellees have to, this court's decision, ensure value versus Phillips Petroleum, which is instructive and should guide the court's decision in this case because it's factually analogous, especially when compared to the three cases that Mr. Axelson relies on for an exception to the general rule. There have been no changes in the law, and so the Looper v. Morris case doesn't apply. Mr. Axelson never objected to the manner in which the court presented the directive verdict motion, and so his reliance on Warren versus City of Lincoln is not applicable. Where there, the police officers had made the arguments but were merely expanding, here Mr. Axelson raises this issue for the first time on appeal, and Mr. Axelson's reliance on Rider isn't helpful because there has been no manifest injustice or plain error. There, the criminal defendant's pre-sentence report indicated, perhaps erroneously, that he had murdered his wife, and the inmate was not given an opportunity to respond to that or object to it, and the court granted an exception even though he had not raised that in the lower court because that failure may have resulted in an illegal sentence. Here, there is no manifest injustice. Counsel, if I could, I'd like to go back to the denial of the motion for continuance. Does the record here tell us the background or the legal basis for the apparently limited role of Mr. Axelson's legal counsel, and how do we know that we would have ever gotten to a judgment as a matter of law had discovery been conducted properly? Well, respectfully, yes, your honor. I mean, there are 600 pages of this record where Mr. Axelson's counsel, who at the time this case was tried, had been practicing for 12 years. He's not a new lawyer. He's a seasoned lawyer. He put on 600 pages of a record that's filed as the party's joint appendix in this case, including nine witnesses. During those witnesses' testimony, he relied on their discovery responses. He introduced exhibits in support of Mr. Axelson's case in chief. He picked a jury. He was not limited in any manner. The entire trial record demonstrates that he was zealously active. Let me turn, though, but I think the record shows that multiple times before the close of discovery, Mr. Axelson complained that he was unable to get records because of the fact he was an inmate, and he was prevented from accessing them. And if his counsel wasn't performing the normal functions as a counsel, it seems he's being put in a catch-22. Well, Mr. Axelson's attorney's motion for continuance was not based on an inability to produce or acquire records. He was appointed in January of 2019. This case was not tried until September of that year. He effectively had nine months to prepare this case. In fact, the case was originally scheduled to be tried in June, and the court rescheduled the case, so Mr. Axelson and his attorney were given the benefit of an additional three months to prepare for this case. There is nothing in the trial court record or in the record before this court that indicates what documents Mr. Axelson claims he needed in order to present his case to the jury. To the contrary, there is a full record of witness testimony. He presented the classification records, the investigative documents, and all the records. So he was more than just a shepherd at trial? Absolutely. He was full trial counsel in the same manner that I was for the Applees. We performed the exact same functions for our respective clients. I think the court's introductory comments were really meant to basically demonstrate that this case was not challenging. In fact, the court observed that he was aware that inmates who lacked formal training or law degrees had presented cases pro se and prevailed, and so Mr. Axelson certainly was not this case was ripe for trial. It had gone through two rounds of motions for summary judgment, multiple rounds of discovery, and interlocutory appeal to this case. Mr. Brown received all of those docket entries and had the ability to review them. He was certainly prepared for trial, which is what the court determined in this court's decision, and U.S. v. ULAND says that all whether or not that additional time is actually needed, and in this case, the judge rightly concluded that additional time was not needed. You didn't oppose the motion for continuance, isn't that true? I didn't oppose the motion for continuance, but that doesn't mean the trial court abused its discretion. It was for the court to determine whether or not a continuance was warranted, and in the court's view of the procedural history, the court determined rightly that there was no continuance required in order for Mr. Axelson to present his case. I want to turn to the second issue. This court's decision in Peterson v. Peterson and in Berkeley v. Gabrielle Brothers both stand for the proposition that no formal motion is required from any party before the trial court can make a legal conclusion and grant a judgment as a matter of law or a directed verdict if that party has been fully heard, and there are cases from this circuit and the Sixth Circuit that hold that when a party presents its entire case in chief, it has been fully heard on this issue, and so if this court can, you know, entertain Mr. Axelson's argument, the trial court certainly had the authority to grant the motion for directed to a sponte, and again, pointing to the court's observations, when the court talked about the way it was going to handle the directed verdict motion, the court said for the non-lawyers in the room, this is how I normally do it, but this is how I'm going to do it on this occasion, and it's important that he addresses that question to the non-lawyers because all lawyers, including Mr. Axelson's counsel, should be prepared to respond to a directed verdict motion, whether it came from counsel for the appellees or whether that discussion was driven by the court sua sponte, and so he should not be surprised. Okay, counsel, if you look at the actual rule for judgment as a matter of law, how do you read that rule to give the district court the sua sponte authority, and it says, just as you note, if a party's been fully heard, the court may resolve the issue and grant a motion, so how do you read that rule in support of your position? Yes, what the cases and other circuits find, and I don't think this court addresses this in Peterson, is that language references if a motion is actually made. That subsection B does not stand for the proposition that a motion is required, and so when you read Rule 50 together with this court's decision in Peterson versus Peterson, where this court says no formal motion is required, the takeaway from that is if the party has been fully heard, no reasonable jury could find for the plaintiff. The court can resolve that issue against the plaintiff sua sponte, but if a motion is made, then he can grant the motion as a matter of law, but no motion is required, so you have to read the Peterson decision and the rule together, and I see that I'm out of time. May I have just a brief moment to wrap up and address one other issue? Yes, you may. I want to talk about the merits of the directed verdict motion because, Judge Kelly, you asked a question specifically about Randy Watson, and at the threshold matter, there are five appellees in this case, but the record is clear that Mr. Axelson only challenged the directed verdict motion as to Ward Watson, and so the court can easily dispose of the other four appellees because there is nothing in the record indicating that he objected to their dismissal, but what's important here is that Mr. Axelson, and the court will find this at joint appendix page 552, did not object to returning that to general population. He wanted to go to barracks one through six, and he was ultimately placed in barracks eight, not because one of the five appellees assigned him there, but because a non-party assigned him to barracks eight after finding he had no enemies in that barracks, and so there just is no involvement from the warden or the other four appellees in terms of his placement in general population, and all of the parties, including Mr. Axelson, agree that he had no enemies and no problems with returning to barracks one through six or barracks eight specifically, and those facts demonstrate that there can't be this subjective knowledge of a risk of harm by anyone, and then one last thing is that the court allowed the case to go forward against two of the defendants and the jury, the two defendants who were a part of the classification, and the jury returned a verdict in their favor, so certainly if the jury heard all of the evidence and deliberated as to and returned a verdict in the defendant's favor, surely Warden Randy Watson would be entitled to that same verdict if the case had gone forward. Thank you for allowing me to conclude. We would just ask that this court affirm the trial court's decisions in all respect. Thank you. Thank you for your argument. Mr. Nguyen, does he have any rebuttal saved? No, Your Honor. Sorry, no, Your Honor. He used all of his time. We gave Ms. Guest a little bit of extra time, so I'll give you two minutes. Can you wrap it up in two minutes? All right, and you are still muted, so we'll start the timer when you unmute. Thank you very much, Judge Kelly, for that. Now, Judge Gress, I just wanted to go back and address your point and your concern about the limited role of legal counsel, and I just want to pose the question. Imagine what the results would be if discovery actually would have been allowed to be done properly. Counsel asked the court time and again to reopen discovery so that he can get these very same records that appellant could not have gotten because he's a prisoner. The second argument that appellate put up is that somehow this pro se litigant is so sophisticated that he didn't need anything and that the judge somehow, that the judge observed that prisoners have won these cases by themselves. But indeed, in the first five pages of the trial record, the court can see that judge, the trial court said he knew of one pro se case where the one that is not a great record and that does not stand for the proposition that pro se litigants, no matter, somehow have this experience that they can do. The second thing that I want to address very, very briefly, but very emphatically is that due process controls. And in this case, due process requires that full opportunity to be heard. And Mr. Eshleton did not have that opportunity. Just as this court, when it made the holding in Wright versus Jones on summary judgment, the idea is that the appellate is not ambushed. And here, the court ambushed the appellate and made the appellate's case for them. And for all those reasons that we had discussed today and on the briefings, I appellate respectfully request that the court reverse and remand. Thank you very much for the opportunity to be here. Thank you both for your arguments, and we will take the matter under advisement.